**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MVP GROUP INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LANCASTER COLONY CORPORATION ) <br> AND CANDLE-LITE, ) <br> ) <br> Defendants. ) <br> ) | No. 2:12-cv-01114-DCN <br><br><br> **ORDER** |

      This defamation case was filed on February 24, 2012 by candle manufacturer MVP Group International, Inc. (MVP) against competing candle manufacturer Lancaster Colony Corporation (Lancaster Colony) and its Candle-lite division. The central allegation in this case is that defendants published false statements to customers of MVP—including "MVP Group is buying wax from IRAN !"—that harmed MVP's business reputation. MVP asserts causes of action for defamation and violation of the South Carolina Unfair Trade Practices Act. Presently before the court is defendants' motion for summary judgment, which was filed on December 5, 2012.

## I.  STANDARD

      Summary judgment shall be granted if the movant shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable

1

jury could return a verdict for the nonmoving party." Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.

## II.  DISCUSSION

Defendants first move for summary judgment on plaintiff's claims for defamation.  A threshold question for the court is whether MVP is a public or private figure plaintiff.  See Waldbaum v. Fairchild Pubs., Inc., 627 F.2d 1287, 1293 n.12 (D.C. Cir. 1980).  Defendants contend MVP is a public figure.  Public figures must show that the defendant acted with constitutional actual malice.  Time, Inc. v. Firestone, 424 U.S. 448 (1976); Curtis Publ'g Co. v. Butts, 388 U.S. 130 (1967); New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

Deciding whether a particular plaintiff is a public or private figure has been described as "much like trying to nail a jellyfish to the wall."  Rosanova v. Playboy Enters., 411 F. Supp. 440, 443 (S.D. Ga. 1976).  The inquiry is "even more difficult" when the plaintiff is a corporation because "prior cases do not establish a method for determining whether a corporation is a public or private figure."  Snead v. Redland Aggregates Ltd., 998 F.2d 1325, 1329 (5th Cir. 1993).  The "inquiry must be made on a case-by-case basis, examining all the relevant facts and circumstances."  Id.

In Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), the United States Supreme Court set forth two avenues through which a plaintiff may be deemed a public figure:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions.

Id. at 351.

First, a plaintiff can be found to be a public figure for all purposes only after a clear showing "of general fame or notoriety in the community, and pervasive involvement in the affairs of society." Id. at 352. "[A] general public figure is a well-known 'celebrity,' his name a 'household word.'" Waldbaum, 627 F.2d at 1294. "Few people, of course, attain the general notoriety that would make them public figures for all purposes." Id. at 1296; see also Blue Ridge Bank v. Veribanc, Inc., 866 F.2d 681, 687 (4th Cir. 1989) ("The attainment of general public figure status is not to be lightly assumed, even if the plaintiff is involved in community affairs, and requires clear evidence of such stature."). Defendants have failed to set forth any compelling evidence that would demonstrate MVP is a general purpose public figure. Cf. Computer Aid, Inc. v. Hewlett-Packard Co., 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) (holding that Hewlett-Packard did not have "such pervasive fame or notoriety to be deemed a general purpose public figure"); Nat'l Life Ins. Co. v. Phillips Publ'g, Inc., 793 F. Supp. 627, 633 (D. Md. 1992) (holding that National Life Insurance Co., which was "among the twenty-five largest mutual life insurance companies in the country, with 250,000 policy holders, over $4 billion in assets and over $25 billion in insurance policy coverage," was not a public figure on all issues).

Second, a plaintiff can be found to be a limited purpose public figure by participating in a preexisting public controversy. Gertz, 418 U.S. at 351. "Trivial or tangential participation" in a public controversy "is not enough." Waldbaum, 627 F.2d at 1297. "The language of Gertz is clear that plaintiffs must have 'thrust themselves to the forefront' of the controversies so as to become factors in their ultimate resolution." Id.

(quoting Gertz, 418 U.S. at 345).  Defendants have failed to produce any evidence that MVP "thrust" itself to the forefront of a controversy regarding the use of wax produced in Iran.

The court finds that MVP is neither a general purpose nor limited purpose public figure.  As a private figure plaintiff, it is required to prove, under state law, that defendants acted with common law malice.  See Fountain v. First Reliance Bank, 730 S.E.2d 305, 309 (S.C. 2012).  Viewing the evidence in the light most favorable to MVP, there are genuine issues of material fact regarding MVP's defamation claims that must be resolved by a jury, including but not limited to whether the alleged defamatory statements were true, whether they were published to a third person, and whether defendants abused any qualified privilege.[1]  See Weir v. Citicorp Nat'l Servs., 435 S.E.2d 864, 865 (S.C. 1993) ("When the truth of the defamatory communication is in dispute, the issue is a jury question."); Murray v. Holnam, Inc., 542 S.E.2d 743, 749 (S.C. Ct. App. 2001) ("Whether the publication went too far beyond what the occasion required, resulting in the loss of the qualified privilege, is a question for the jury.").  For these reasons, the court denies defendants' motion for summary judgment on MVP's claims for defamation.

---

[1] Defendants assert that the alleged defamatory communications were protected by a qualified privilege.  The party asserting qualified privilege as a defense bears the burden of proof.  Swinton Creek Nursery v. Edisto Farm Credit, ACA, 514 S.E.2d 126, 134 (S.C. 1999).  The court will hear evidence at trial and determine if such a privilege applies.  If so, the jury will determine if the privilege was abused.  See id. ("Factual inquiries, such as whether the defendant[] acted in good faith in making the statement, whether the scope of the statement was properly limited in its scope, and whether the statement was sent only to the proper parties, are generally left in the hands of the jury to determine whether the privilege was abused.").  While defendants argued at the hearing that a finding of qualified privilege requires MVP to prove constitutional actual malice, South Carolina case law clearly allows a private plaintiff in that scenario to show that the defendant acted with common law malice.  See Hainer v. Am. Med. Int'l, Inc., 492 S.E.2d 103, 106-07 (S.C. 1997); Murray, 542 S.E.2d at 750 ("The case *sub judice* is controlled by the definition of common law malice because the plaintiff is a private citizen.").  MVP has presented sufficient evidence of common law malice to submit the case to the jury even if defendants were protected by a qualified privilege.  See Eubanks v. Smith, 354 S.E.2d 898, 902 (S.C. 1987).

MVP also asserts a claim for violation of the South Carolina Unfair Trade Practices Act (SCUTPA). Defendants move for summary judgment on the basis that this case "involves a wholly private act," not one that implicates SCUTPA. Defs.' Mem. Supp. Mot. Summ. J. 34.

SCUTPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). The private cause of action under SCUTPA is a limited one. To recover, a plaintiff must show: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Estate of Carr ex rel. Bolton v. Circle S Enters., Inc., 664 S.E.2d 83, 89 (S.C. Ct. App. 2008). The second element may be satisfied by proof of "facts demonstrating the potential for repetition of the defendant's actions." Daisy Outdoor Adver. Co. v. Abbott, 473 S.E.2d 47, 49 (S.C. 1996) (citing Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347 (S.C. Ct. App. 1986)). The potential for repetition is generally demonstrated in one of two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." Wright v. Craft, 640 S.E.2d 486, 502 (S.C. Ct. App. 2006). "Conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 581 (D.S.C. 2004).

Here, MVP fails to establish an adverse impact on the public through "specific facts." Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). MVP cites no evidence of past similar actions taken by Lancaster Colony, and its meager evidence supporting a finding that Lancaster Colony may take similar actions in the future—specifically, the deposition testimony of Candle-lite division President Jerry Vanden Eynden—falls short of showing that this is anything other than a private dispute. Because "SCUTPA is unavailable to redress private wrongs if the public interest is unaffected," Ardis v. Cox, 431 S.E.2d 267, 271 (S.C. Ct. App. 1993), the court grants summary judgment to defendants on MVP's SCUTPA claim.

### III.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment. This case will be set for jury selection on May 1, 2013.

**AND IT IS SO ORDERED**.

                            **DAVID C. NORTON**
                            **UNITED STATES DISTRICT JUDGE**

**March 12, 2013**
**Charleston, South Carolina**